Mayretta **WILSON–THOMAS**

v.

**SMALL BUSINESS ADMINISTRATION.**

Civ. A. No. 86–2372.

United States District Court,
E.D. Pennsylvania.

Feb. 17, 1987.

Leslie Payton, Philadelphia, Pa., for plaintiff.

Virginia Gibson-Mason, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NEWCOMER, District Judge.

I have considered the evidence and the arguments of counsel, and I am prepared to make my findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff, Mayretta Wilson-Thomas, a black female was hired as a secretary at the GS-5 level by the Small Business Administration (SBA) Management Assistance Division in October 1980. William Gennetti, District Director for the Philadelphia SBA District Office and Mr. Fedyne, plaintiff's supervisor, originally recommended hiring her over several other candidates.

2. In early 1981, the Reagan administration implemented a freeze on all federal civilian hiring.

3. The freeze prohibited the SBA from replacing employees who left the employment of the agency. It allowed job changes within the agency. However, any job change would result in a vacancy in the position that an employee left and could not be filled except with intra-agency transfers. Transfers within the agency above the level of GS-12 required special clearance from SBA Headquarters in Washington, D.C.

4. During the relevant time period, no time limit was placed on the hiring freeze, and the Philadelphia District Director's Office did not know when the hiring freeze would end.

5. During the hiring freeze, the number of employees in the SBA District Office declined, because some people left the office and they could not be replaced.

6. Early in 1981, plaintiff expressed dissatisfaction to Gennetti with her position in the Management Assistance Division because of alleged racial discrimination, and personality differences with her supervisor, Mr. Fedyne. Gennetti suggested a lateral transfer as a possible resolution of her concerns.

7. In response to plaintiff's concerns, during the first six months of 1981, Gennetti instituted a series of job switches to accommodate plaintiff's desire to be transferred into the Minority Small Business/Capital Ownership Development (MSB/COD) Division as a GS-5 secretary. Another secretary took her former slot. As Mr. Gennetti told Ms. Wilson-Thomas at that time, this transfer had nothing to do with plaintiff's desire to be redesignated as a Business Development Technician (BDT) within MSB/COD, but rather was an independent change.

8. From October 1979 until April 1981, Mr. William Jones was the Assistant Director of the MSB/COD Division of SBA. Jones reported to Gennetti. From the time he took the position, Jones repeatedly asked that Gennetti hire an assistant for Mr. Jones in MSB/COD, as well as relief from other understaffing problems. Gennetti did not believe that such an assistant was needed. Nonetheless, Gennetti approved the creation of such a job, which came to be known as Business Development Technician. Mr. Gennetti lacked confidence in Mr. Jones' ability to perform his duties as Assistant Director of MSB/COD, and to train his own assistant to perform the technical aspects of the BDT job at the same time.

9. Gennetti did not have the authority to hire employees. Instead he made recommendations to the Regional Administrator for such decisions. Likewise, Jones did not have the authority to make employment decisions or to commit positions to employees.

10. The chain of command for personnel decisions requires that the Assistant District Director for the MSB/COD interview a candidate selected from a roster of eligible candidates prepared by the personnel office and make a recommendation to the District Director, who may or may not follow that recommendation. If the District

Director follows the recommendation, he forwards it to the personnel office, which in turn forwards it to the Assistant Regional Administrator for that program. Approval must be obtained at each level. The Equal Employment Office reviews and approves the recommendation. Then, and only then does the Regional Administrator make the employment selection.

11. Gennetti anticipated that when the freeze lifted, he would receive authority to fill three additional employment positions in his district because of the recommendation of a staffing study of the Region. After several discussions with Jones on the subject of hiring an assistant for Jones, Gennetti told Jones that if all three additional slots were approved, Jones could use one of them to hire his assistant.

12. Anticipating possible future relief from the freeze, and to placate Jones, Gennetti instructed personnel to advertise for a Business Development Technician position in the MSB/COD Division. He informed Jones that filling the position was contingent upon the additional slot approval and Jones' preparation of a training program for the position.

13. The Business Development Technician post was to be an upward-mobility position, intended to provide on-the-job training to increase the skills of the employee, and to provide an opportunity to increase the employee's salary grade level as well. The only qualification for the position was that the applicant hold a GS-5 grade.

14. Gennetti did not support the creation of the Business Development Technician position, which he nevertheless authorized, for several reasons. The position required substantial training effort and one to two years to bring the employee's skills up to the level to be able to perform the professional contract and business development work in that division. Even after that time, a technician would not have the same level of skills as a contract specialist. Therefore, Gennetti preferred a contract specialist for that division. There was already a shortage of professionals in that division, and if their time was spent in training the technician they would have less time to do their own work. Under the freeze, filling the technician position through an intra-agency transfer would deprive the division of a clerical position, leaving only one secretary, which was not sufficient coverage for that division's work. Creation of the new position during the freeze was not favored, but it was accomplished. Finally, Jones needed substantial supervision by Gennetti in performing his work, and Gennetti believed he might not properly train the technician. Jones failed to provide Gennetti with a training program for the Business Development Technician position.

15. From March 9 through 13, 1981, the position was advertised within Region III of the SBA. It was a combination clerical and professional position in the MSB/COD Division, and it was a "new position" in that division. There were no other Business Development Technicians there.

16. The Personnel Department sent to Gennetti and Jones the Roster of Eligibles, which listed only plaintiff.

17. Plaintiff was the only applicant who met the qualification for the position because she was the only GS-5 employee who applied. Without specific authorization, Jones interviewed plaintiff; and without approval, Jones informed plaintiff that she had been selected for the job.

18. Jones encouraged Ms. Wilson-Thomas to press Gennetti about the technician post. Indeed, Mr. Jones may have given Ms. Wilson-Thomas more encouragement than was called for under the circumstances, in hopes of pressuring Mr. Gennetti to approve Ms. Wilson-Thomas for the post.

19. Gennetti did not formally interview plaintiff for the position, but he spoke to her at her instigation about the position. Gennetti told her that she did not yet have the position, that it depended upon whether he received authority for other employment slots, whether Jones developed an adequate training program for the position, and whether he could first hire a contract specialist in the MSB/COD Division. It appears that, had Mr. Gennetti made greater efforts to explain the whole situation to

Ms. Wilson-Thomas, then Ms. Wilson-Thomas might not have developed her understanding that she was being discriminated against.

20. In April 1981, Jones left the agency. Moreover, no training program for the position had been developed when he left.

21. Gennetti continued to believe that it was not a good management decision to hire an employee in the position, given the nature of the position and the staffing shortages that existed at the time.

22. The three additional slots for the Philadelphia District Office did not become available.

23. Mr. Gennetti did not recommend, and the Regional Administrator did not authorize the hiring of plaintiff in the position.

24. On or about June 8, 1981, the Personnel Office cancelled the job notice for the position without its being filled.

25. On or about June 14, 1981, plaintiff's transfer as a GS–5 clerk-typist in the MSB/COD Division became effective.

26. From January 1, 1980 through October 29, 1981, nine different positions were cancelled after the Roster of Eligibles was sent to the Selecting Official. The applicants who appeared on these Rosters were male and female, minorities and non-minorities.

27. In June 1980, a white female named Doris J. Young was hired as a Business Development Technician in the Management Assistance Division. She was hired in that position six months before the Reagan hiring freeze went into effect in January 1981. Because the pressures from the Reagan hiring freeze were not then in effect, it is difficult to conclude that the circumstances surrounding the hiring of Ms. Young were similar to those surrounding the plaintiff's case. In addition, Ms. Young's job was not within the upward-mobility program.

28. Mr. John Banks, a black male, originally began his association with SBA in July 1981, during his senior year in high school, through the Junior Federal Fellowship Program. He began working with SBA as a part-time employee, with the title Loan Servicing Assistant in the Portfolio Management Division. Mr. Banks held that position until his graduation from college in December 1985. In January 1986, Banks was hired as a permanent employee, in the position of Business Opportunity Assistant ("BOA") in the Minority Small Business Division. The BOA position was not advertised, and Banks was not required to compete for the job, because the Fellowship Program gave the SBA the opportunity to give a Fellow a permanent position upon graduation from college. The hiring of Mr. Banks was in full accordance with those procedures applicable to the Fellowship Program.

29. The hiring of Mr. Banks occurred almost five years after plaintiff failed to get the Business Development Technician post. While the duties of Business Development Technician and Business Opportunity Assistant are similar initially, the BOA job later includes significant duties which are not required of a BDT. The BOA also leads to a full specialist position, while BDT does not. The differences between the Business Development Technician position, for which plaintiff applied, and Mr. Banks' Business Opportunity Assistant post are significant.

30. The SBA did not treat similarly situated employees not in plaintiff's protected group more favorably than Ms. Wilson-Thomas. Because of the Reagan hiring freeze, and the participation of Mr. Banks in the Junior Fellowship Program, I cannot conclude that Ms. Doris Young and Mr. John Banks were employees situated similarly with Ms. Wilson-Thomas.

31. The SBA has shown by a preponderance of the evidence that it had legitimate, non-discriminatory reasons for not selecting Ms. Wilson-Thomas for the Business Development Technician job. Those reasons include the inability to fill secretarial positions from outside the agency because of the hiring freeze; the need to fill other positions, such as contract specialist, before filling the Business Development Technician post; and the managerial decision that the Business Development Techni-

cian post was not necessary, and that training would take time away from fulfilling other functions within the MSB Division.

32. The plaintiff has failed to show that the legitimate, non-discriminatory reason for plaintiff's failure to get the BDT job was pretextual.

### Conclusions of Law

1. This court has jurisdiction over the parties and the subject of this action.

2. The plaintiff in a Title VII case must carry the initial burden under the statute of establishing a *prima facie* case of racial and gender discrimination. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

3. A *prima facie* case is made by showing (i) that the plaintiff belongs to a racial and/or a gender minority; (ii) that she applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite her qualifications, the agency cancelled the position while similarly situated employees, not in her protected group, were treated more favorably.

4. If the plaintiff succeeds in proving by a preponderance of the evidence a *prima facie* case, the burden then shifts to the defendant to articulate some legitimate, non-discriminatory reason for the employee's rejection. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

5. The defendant's burden is to rebut the presumption of discrimination by producing evidence that the plaintiff was not awarded the job for a legitimate, non-discriminatory reason. The defendant need only articulate, through the introduction of admissible evidence, a legitimate, non-discriminatory reason for the plaintiff's rejection. *Id.*

6. If the defendant carries this burden, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.*

7. The plaintiff has failed to make out a *prima facie* case of race or sex discrimination, because she did not prove that others similarly situated but not in her protected group were treated more favorably.

8. The defendant has produced evidence of legitimate, non-discriminatory reasons for not placing the plaintiff in the position of Business Development Technician, and has shown that such reasons were real and not pretextual.

9. Judgment will be entered for the defendant.